Good afternoon. May I please accord Hugo F. Larios on behalf of Petitioner Mr. Olegario Rosales et al. Your Honor, this case presents the question of how do we hold a government agency accountable for its inaction to the detriment of an applicant for asylum. Counsel, help me with, well, I have two things that are related. One is he filed for his relief in 2006. Now, if everything had gone fast, it strikes me that the best he could have hoped for is or feared was a decision in 2009 or so. And it would have already been too late in terms of the change of government and the peace accord in his home country. So how is he hurt by the excessive delay? Your Honor, the petitioner filed two forms of, two benefits with the government. And if I may, first he filed for asylum in 1994. And that asylum application to this day remains unadjudicated. How he ended up in removal proceedings was in 2006 he submitted benefits under the NACARA process, which is independent, if you will, from his asylum application from 1994. The How early would his final decision have to have been obtained for him to get any benefit? For which one, for the asylum or the NACARA? The asylum. Well, Your Honor, when he filed for asylum in 94, the situation in Guatemala was fairly recent and there were still the guerrillas and the fear and the persecution. I think his testimony was that the peace accord was in 95. It was actually in 96. And what I'm thinking is even if they had just gone lickety split, the peace accord would have come down before the decision on his 94 asylum application and he would have been out of luck because of the peace accord. Well, Your Honor, when he first came into the United States in 1990, all the events in Guatemala were still fairly fresh. And even if the peace accords were in the books, if you will, that doesn't translate to an immediate effect in the day-to-day life of the country. But isn't the date we should be looking at 1994, not 1990? Because that – but correct me if I'm wrong, please. I think he came here in 1990 and he first applied in 94. Is that right? Correct. Okay. And the peace accord was 96? I do believe so. Okay. So when he first applied, the peace accords were not in effect yet. And therefore, the fear and the persecution was real and substantial. And do we know why that 1994 application was never adjudicated? No, we don't. When he went into – when he was placed in removal proceedings in 06, again, it was based on the denial of his NACARA application. Right. And that's when the NACARA and the asylum and the cancellation of removal was presented in removal proceedings until 2009, I believe. So could I just ask, when did he apply for – he thought he applied for NACARA? Yes. And when did he think he applied for NACARA? In 2006. Okay. That's consistent with my notes. Thank you. Yes. So the question remains, how does an individual or how do we hold a government agency accountable for its inaction? Well – To the detriment of an applicant. Even if he'd gotten asylum, asylum does not entitle – the statute says – I don't know. I doubt if they really enforce this or – I don't know how much they enforce of anything. But the statute says you're not entitled to remain in the United States permanently just because you get asylum. If conditions change, you can be sent back. So he's basically been in the U.S. for 24 years without any paperwork saying he has a right to be. How is he harmed? Well, Your Honor, that was the same reasoning that the court held in removal proceedings. However, all this benefit, if you will, is temporary. Had his asylum application been approved or adjudicated and approved, he could have become later on a legal permanent resident and subsequently a United States citizen. Whereas this time he's only been temporarily in the United States, and with the risk that if his application is denied, he's facing removal from the United States. And that's the harm that he would be suffering. So the harm is you're saying he could have gotten a green card and then citizenship. That's why he was precluded from those benefits. And not only was he precluded from gaining those benefits, but he's facing removal from the United States. Now, there's some – I do acknowledge there is a plenty of cases where the test for equitable estoppel, you have to show an affirmative misconduct by the government. And all these cases show nine years to adjudicate asylum is not sufficient. Three years to adjudicate a 9-130 petition is insufficient to prove affirmative misconduct. So then the question becomes, and again, how do we hold the government agency accountable for its inactions? Does that mean we just file an application and if 10, 15, 20, 24 years pass along, the individual is without any relief? Why isn't that exactly what the word affirmative means in the test for estoppel? I'm sorry? Why isn't that just what the word affirmative means? Misconduct by way of inaction is not affirmative misconduct. Well, that's what the courts have held. However, there are some cases where the courts have found that nonfeasance could be misfeasance. In Santiago v. INS, this court in 1975 stated that those two terms are slippery terms. Moreover, I will present this court with even the Supreme Court in INS v. Hebe. Justice Douglas, in his dissent, specifically stated that a government's inaction constituted a deliberate and successful effort by the government to preclude citizens from applying for asylum. I agree with you. We do have cases where inaction is treated as affirmative misconduct. I think it was the Seventh Circuit had one where it was basically they stalled on one thing so that he'd get deported on something else before the decision came down where he might win. But we don't seem to have anything like that here. We just seem to have neglect. Well, that is correct, Your Honor. Do we have anything else here? Is there something more than neglect? Well, other than no, Your Honor. I mean, it's just 13 years of inaction, or better yet, 24 years of inaction. So you don't have a deliberate stall so that the government could get some other benefit? No, Your Honor, and that's precisely what the petition will be asking this court, to hold that non-action, it can be inferred deliberate action by the government, where there's an unjustified, unreasonable, unexplained delay to adjudicate an application that constitutes or that could constitute deliberate action by the government. And if I may, I will reserve the remaining of my time for rebuttal, please. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. Margaret O'Donnell for the United States. Counsel, I have a question. I don't know if you're even the right part of government to address it to or not. This is a troubling case because it looks like this is one of those cases where the fellow is a good citizen in every way except he's not a citizen. And I thought when the administration announced that they were going to exercise discretion in which cases to prosecute and which not to, that that's the kind of case that was for. I don't get it. Why are we here? Your Honor, you're right. I don't have that prosecutorial discretion in this case. That rests with the Department of Homeland Security. Counsel and I spoke about this, I think it was Friday or Thursday, it was raised for the first time, the possibility of prosecutorial discretion. I told him it was probably not the best course of action to remove this from the docket at this time to explore that. But certainly it was not the best course of action. I didn't hear what you said after that. I didn't believe it was the best course of action to remove it from the oral argument docket. We've gotten some. Yeah, you had a little problem last time. Yeah. So I talked to him about other things. The availability of prosecutorial discretion does not terminate upon the issuance of an order in this Court. DHS still has that ability to look at this man's record, his life here, and make a determination. What you're really saying is you're here even though you don't know if you want to be here, and it's better to waste our time coming to a decision, writing an opinion, than it is trying to resolve it in advance. I'm sorry if I gave you that impression. That's exactly the opposite. What we've been told is that not to remove things from the oral argument document when it's close in time. That it's a, it's a, it's. Okay. You've avoided the problem of removing it from the oral argument docket when it's close in time. Should we withdraw the case from submission, give you a month or whatever amount of time it takes to get authorization? I don't think there's any need for that. In fact. Exercise discretion and it will go away? I don't think there's need for that. In fact, my sense. You'd like to win first and then get an exercise of discretion. But the fact is you don't know if you're going to win first or if you're going to get a decision from the Ninth Circuit that's one of the many that your agency prefers not to have. You're absolutely right, Your Honor. However, my experience lately has been that DHS much prefers to have the matter resolved before reaching into their bag of tricks or whatever you want to call it. And that's what I'm saying. You want us to go to the work of issuing a decision and then you're going to decide what to do, whether you really wanted one or not. Your Honor, I go back again. This is not my decision to make. I'm not blaming you personally. And I would not waste your time, nor would I subject myself to this. When we say you, I think we mean it in the plural. You're the United States government. There are two things I need to address about this case, and that is the Supreme Court has specified that how these are to be dealt with. They're the ones in Miranda, and this Court has followed it in at least four other decisions, two of which are unreported, and the primary one being JAA, J-A-A, that it is the burden is on the Petitioner to show the affirmative conduct. I'm sorry? I think Judge Kristen had a question for you. Oh. Am I correct that this was on our calendar a year ago? I don't know, Your Honor. I was assigned it because I had another case out here to argue. I think the history is that this was on our calendar last September, and then I think we had a sequestration issue that basically shut down the Court for whatever that was, a week or two. Right. And I think that was the genesis of this being concluded all of this long time. And I only mention that because I'm trying to get my arms around the same question Judge Kleinfeld is asking. In other words, I appreciate that from your earlier comments that you and opposing counsel just spoke about this last Thursday or Friday, but and that that was very close to the time of calendar. But it seems to me, really, this came up to the agency's attention, and we were ready for argument a year ago. So you see, we're not trying to be difficult or hard on you. It's just that for us, this is deja vu all over again because we've now prepared for this case twice. I do understand, Your Honor. And I apologize, but I don't know what else I can do. It's my obligation to come and make the argument. No, you have to make an argument if you're here, but that doesn't mean you can't say you have no opposition to a referral to mediation to see if this can be settled at the court. Well, this is important information to know because it kind of goes against what we've been told through our management. I'm happy to put something into mediation and allow – I've done it many, many times to be – to explore prosecutorial discretion. In fact, my earlier one that I just argued at 2 o'clock, we did that. Well, I hope we could do that and have you be the person who was there. Yes. You seem so reasonable. It's wonderful. You were trying to say a minute ago there were two points you needed to make about the merits, and one of them you just made. We get that point. Right. Okay. And what's the second one, please? Actually, there's probably three. The second one is he has not challenged any of the findings on the merits of his application, and so he's waived them. Okay. But the third one is in the absence of complying or even arguing equitable estoppel in his opening brief, he waives that also. And so we're left with only the statute, 8 U.S.C. 1252G, which says that no court will have jurisdiction over when a matter is put into proceedings. Right. Okay. And that would be the nutshell. Yes. Do you have any comment on the recent case of Brown v. Holder in which this Court said it was a violation of due process when there was this kind of a delay? No. I don't have that in my list of cases that I read for preparation. It seems to be somewhat different from the equitable estoppel cases, although there are certainly arguments that can be made distinguishing it. But thank you. Could I add one last thing on that topic? The burden is on the Petitioner to find the evidence that there is something other than negligence or malfeasance in this case. Right. So I think that's a really good point, and I appreciate your mentioning it, because I asked opposing counsel, does he know why this was sitting for 13, 14 years, whatever it was? And, of course, he doesn't. But I wouldn't expect he would. Exactly. It seems that that information would be in the government's purview. It would be in DHS's, but I don't have access to that. I can only speculate. Right. And so that leaves us any value. I didn't mean to interrupt you, but that's exactly our problem. It puts us in a quandary about what's up with this case. I would, if I were to speculate, I would say that this is in that period after the passage of NACARA, and DHS was overwhelmed with applications. Sure. But I don't know that to be a fact. The problem with the government position, legal or otherwise, is if you wait 13 years, as Judge Confield has pointed out, maybe things will have changed and you won't be entitled to asylum. On the other hand, that may be true after two or three years. That's true. After 13 years, it may be the opposite. You know, if you talk about Syria and there were people revolting against President Assad, it might be one thing at the time of the hearing or a year later. But 13 years after that, you might have ISIS controlling Syria. And that same individual who was fighting President Assad might be fighting ISIS. Things change all of the ways. And when 13 years passes, in this case, 13 years has passed. There are now two teenage children. And we're talking about sending them back to a country where conditions have changed, where there's terrible gang warfare. Gangs are recruited. Young teenagers are recruited into gangs. And there's death squads. These weren't the conditions at the time an asylum application came up. As you know, there was a peace accord. The problem that would make him seek asylum is somewhat different now with his children. I mean, these are two parents who have been model parents as far as we know. The children that were born here, they're American citizens. The mother could be sent to Mexico. The father to Guatemala. It does seem that there's a difference in circumstances now due to the government's failure to act for 13 years. It may not testify equitable estoppel. And it may not be a due process violation, or it may. But it seems it would warrant a reconsideration of a decision that's based on facts that are long in the past. I appreciate that, Your Honor. I appreciate your candor, counsel. I want to compliment you and thank you for that. Thank you. We would like to have you come back again. I'll be here in the next 20 minutes. Ten minutes. Thank you, Your Honor. One more question before your 20 minutes is gone. There was a statutory argument you made, and I'm not sure I got what statute you're talking about. 8 U.S.C. 1252G. It's a little hard to find in the book, but I printed it out. I don't need to print it out. I've got the book. But it basically says that no court will have jurisdiction to review the department's not my department, Department of Homeland Security's decision of when to initiate proceedings in immigration cases. Unless, with the same caveat for the other jurisdiction limiting things, that it's a constitutional issue or a legal question. Thank you. Thank you. Your Honor, briefly, I'd just like to address the issue of the waiver, waiving the argument. I do believe in our opening brief we did argue the unfairly prejudicial result to the Petitioner. So I don't believe that the issue was waived at all. Other than that, I don't have anything further. Thank you. Thank you. Nothing more. This case here will be submitted.
judges: REINHARDT, KLEINFELD, CHRISTEN